Good afternoon. The first case this morning is No. 06-1330, Baum Research v. Univ. of Massachusetts. Mr. Heward. I am pleased to go on. I wouldn't have heard of a firm I'm proud to be standing with today. It's the Hewald S.C. Univ. of Massachusetts. The starting point for this case is the fact that the Commonwealth of Massachusetts has sovereign immunity, as does its university. Before you get to that, I want to ask you a question on your claim or the theory on which you're seeking appellate review of this order, which is obviously not a final order. My question is why, when the district court some years ago initially denied sovereign immunity, didn't you appeal at that point? That's a good question, Your Honor. Before my time on the case, I had discussed that very question with counsel from the university. At that time, the focus was more on trying to settle, looking more toward mediation than to escalation of the conflict by coming to this court. The reason I raise that question is in Justice White's opinion in that Puerto Rican case. He stresses that one of the critical things about the 11th Amendment is that people will not be subject to having to litigate a case. I think there's some statement that the immunity issue should be decided before you get into problems of discovery. And here it seems to me it's exactly the opposite. You've been through the whole trial of this case. And now you come in and say we should review this interlocutory order denying sovereign immunity. And it bothers me whether that is an appropriate instance for us to exercise our jurisdiction to review this interlocutory order. Your Honor, I understand the question. The third prong of the Puerto Rican case has to do with whether the interlocutory order would be rendered effectively unreviewable. Well, I think everyone agrees it would be effectively unreviewable if you had to wait until the final judgment. That's because the immunity gives you the right to avoid a trial. But here you've gone through the trial. Your Honor, we've been through one trial of three. As you recall from the briefs, the claim was divided for trial and for discovery between the contract claim and the patent claim. The patent claim has never been tried. The contract claim was tried but is going back, if the court sends it back, to trial a second time on the damages question. So although we acknowledge that because we have been through one trial, we do not have all of the benefits of avoiding trial, we still have two trials to go. Two out of three trials are burdened to the Massachusetts University to have to defend the various sort of burden. That's not before us, is it? The question is the trial, the issue, the judgment on the license, and what may happen in the future on facts that aren't before us, not before us on this appeal, are they? Your Honor, the fact that there are two trials left to go is part of the record of this case. And in response to Judge Newman's question, my point was that we do, in fact, have before us the very sort of burdens that the interlocutory appeal doctrine was designed to avoid. For the university to have to defend these two trials is the very sort of burden the doctrine is designed to avoid. I think what Judge Newman might be also suggesting, and I agree with her, is that you want us to rule on sovereign immunity with regard to your patent claims, when the trial court below did not ever consider a rule on this issue, and that there's no way that that's before us. And how are we supposed to reach out and decide something that's clearly not before us? Your Honor, with all due respect, the trial judge did rule on the application of the 11th Amendment to the patent claims. On the application of the 11th Amendment to the contract, which was a patent license. Is that correct? She ruled on that, Your Honor, as well as dismissing our motion to dismiss the patent claims based on the 11th Amendment. That, too, was raised after the trial for the contract claim. There was a motion filed to dismiss the contract claim based on sovereign immunity. There was also a motion made to dismiss the patent claim based on sovereign immunity. She, in fact, denied both of those motions. Let's get to the substance of the waiver and of the contract and of the clause in the contract that the judge found waived. Yes, Your Honor. The standard that the plaintiff must meet is, did this language they point to unequivocally waive sovereign immunity? Well, it did, didn't it? There's no question. I don't think that you said that the language didn't waive immunity. I thought your argument was that the person who signed the contract on behalf of the university was not authorized to waive immunity. Your Honor, we make both arguments. Let me touch first on the one or the language, then move to the other. Edelman v. Jordan says that that unequivocal waiver standard is met only if there is no room left for any other reasonable construction. And we have argued and I've raised that there is a reasonable construction. Hereby submit to jurisdiction? What's ambiguous about that? Of the appropriate federal court. There is a lot of ambiguity in the word appropriate. But the question isn't here whether the district court is an appropriate court. The question is whether this is an appropriate case for the district court to decide. And the word appropriate modifies court, not case. Yes, Your Honor. There are some cases where a federal court is appropriate and some cases where a federal court is not appropriate. And certainly a federal court is appropriate in a diversity, if it meets the diversity requirements or patent infringements. Those would be elements of what it takes to be appropriate. But also, Your Honor, the 11th Amendment says that a federal court is not appropriate for a damages claim if the plaintiff had brought an exhaustion claim. No, it doesn't say the federal court is not appropriate. It says the federal court judicial power does not extend to, which is something else. Well, I'd like for you to address Judge Newman's point is, what do you think the word submit to jurisdiction means if it doesn't? And I think we're all in agreement that sovereign immunity relates to jurisdiction, doesn't it? Yes, Your Honor. We believe that this clause was designed to avoid the kind of minimum context analysis that the court would otherwise have to go through if the court sitting in Michigan has before it a Massachusetts defendant, much the kind of analysis this court went through in Kennington C. It solves the long arm jurisdiction problem. It does not solve the sovereign immunity problem because a federal court is not an appropriate court in which to bring a damages action. If they had brought an injunction action, it would be appropriate. It strikes me as a very peculiar meaning to be given the word appropriate in this contract. It seems to me more plausible and appropriate means with proper venue. Your Honor, if I may, the issue is not what is the most plausible meaning of the word appropriate. The issue is whether the meaning that we are suggesting is plausible. Because if the court in this case is confronted with two reasonable constructions, one of which favors us, one of which favors them, under Edelman v. Jordan, because there is room for a reasonable construction that does not waive sovereign immunity, then the court must adopt that construction. So now which construction favors the university? Is there an inappropriate federal court? I don't understand. All that there is is the district court. Well, Your Honor, the word appropriate modifies both state court and federal court. So it would be an appropriate court if it were, again, an injunction action, but not if it is a damages action. We believe that is the fundamental principle that the 11th Amendment stands for, is that going to a federal court is not an appropriate venue in which to sue a commonwealth for damages. Even when there is a patent infringement claim involved? Yes, Your Honor. College Savings Bank makes that point. If I may move on to the other question. This court has decided a number of cases where a government contracting agent has exceeded the bounds of his or her authority, and what this court has said in those cases applies directly here. Are those cases involving government contracts disputes? They are involving contract disputes between private parties and government contracting agents, and if there were a difference between those cases and this case, then the difference favors us because here we have a constitutional principle at stake. Which you have waived. Well, we say no, but even if the language was the most stark, unassailable, unambiguous language possible, Louise Griffin had no authority to give away the sovereign immunity of Massachusetts and expose the taxpayers to millions of dollars. Do you dispute that she had authority to sign the contract? She had authority to enter into other terms. No, I don't want that. You don't contend that this whole contract is invalid because she had no authority to sign it. No, Your Honor. The contract has a certificate clause in it that says that if some clause is invalid… No, I know, but could you answer my question? You do not contend that this whole contract is invalid because she had no authority to sign it. We do not contend that she was wholly without authority to agree to any of the terms of the contract. We do contend she was wholly without authority to waive the sovereign immunity of the Commonwealth. And if I may, in order to prevail on this point, the plaintiffs must show two things. One, they must show… Now, the best case I could give you is on JMOL after the trial, which, by the way, is way too late under all of our precedent. The best case I can give you is you there make some assertion about the University of Massachusetts did not have authority to enter into a sovereign immunity waiver. Now, I would imagine under the trustee clauses with regard to the University of Massachusetts, as you're standing here today, you would agree with me that the trustees of the University of Massachusetts have the ability to waive sovereign immunity. Do not. No statute says that. Absolutely not. And even if they did, there is no evidence in the record of any resolution by which they exercised that authority. That's a different question. But what about the fact that you never, ever raised this issue? I mean, that's on appeal. You don't get to raise things for the first time. My fourth point, Your Honor, on page 1263 of the appendix, if there is a brief filed by the University which says, quoting a case called the Wayne State, this is the last full paragraph toward the end, the defense of sovereign immunity may only be waived by those authorized to do so. In quotes, the authority to waive such defense is in the legislature, and until there is legislative action authorizing an officer or agent of the state to waive such defense, it may not be done by any officer or agent. Counsel, this is your Jamowell post-trial. I'm looking at the cover on page 1259. You did not raise this during the trial. That is true. Well, then you can't raise something for the first time after there's already been a full trial in Jamowell. We have a million cases that say that. Let me make several points. Number one, we can raise sovereign immunity at any time. Actually, Counsel, is sovereign immunity waiver governed by regional or federal circuit law? Because both counsels said in their brief it's regional circuit law. Is that right? I believe it's federal circuit law, Your Honor. There was a case we cited in an opening brief that suggested that it was regional circuit law. We, in our prior brief, said no. We believe based on a more recent case decided in August that it is federal circuit law. Under other law, we prevail. Your Honor, let me point out that opposing counsel did not say when we raised it the second time that we had raised it too late. They have waived, if you will, their waiver argument. They did not say below that we had raised it too late. Let's get to the core of authority and waiver and so on. Let's assume that it's properly before us. If we think that it isn't, we'll let you know. But in terms of this really to take a person with a fairly high position in the university system, my guess is that she signs patent license agreements all the time. My guess is more than a guess that they all have this clause in them, because I doubt if based on the jurisprudence that's evolved, anyone's going to enter into a patent license with the university if they know that they aren't going to have any recourse. So here, what you're saying, if we accept your theory, is that none of those agreements is valid. Your Honor, we would not concede that all the agreements have this clause in them. This clause predated College Savings Bank, which really put everyone on notice as to what clauses must say. The point is twofold, Your Honor. But College Savings didn't say that you can't waive immunity. It said just the opposite. Correct. It said that you had immunity and therefore put everyone on notice that if you wanted to hold a state accountable for a patent violation, you had to have a waiver. But no, there are two fundamental points, and it's their burden to prove them. Number one is that there was a legislative delegation to the trustees of the authority to waive sovereign immunity. There is no statute saying that. No statute says they have the authority to waive sovereign immunity. Those words must be unequivocally expressed in a statute. They are not. But you're saying that they have never waived? The trustees of the university have never acted? Why would anybody sell them paper or desks or anything? Why would anyone deal with them? Well, Your Honor, I suppose based upon their good faith, which they also showed in this case. But the point is, Your Honor, that they do not have that authority under Massachusetts law. The statutes just do not say that they do. And even if you assume that somehow they did, where is the proof that they ever exercised that power or ever delegated it to Louise Griffin several steps down? So if she represents, based on her title, that she has that power, and if in fact, and I guess I hadn't realized that this contract has been in existence for so long, but if her entire action was ultra virus and unenforceable and incorrect, and nobody said anything all these years that this contract has been in effect. And then when there's a dispute, they say, gotcha, you can't sue us. Isn't there some burden placed on the university to speak out in this period? Your Honor, I can't find any law like that, and it is not cited to us by opposing counsel. What I do find is this court's decision in Harvard-Loomis v. United States, which says that anyone entering into an agreement with the government takes the risk of accurately ascertaining the authority of the agents who report to act for the government. And this risk remains with the contractor even when the government agents themselves may have been unaware of the limitations of that authority. Let me see if I understand the position of your dialogue with Judge Newman. Basically you say the University of Massachusetts has no power to waive the state sovereign immunity, is that correct? That is correct, Your Honor. Okay, now I'd like to ask you one other question. Coming back to the language of this provision, where you say that's not enough to show a waiver of sovereign immunity, what in your view would be necessary for Article 3.3 to constitute a waiver of sovereign immunity? I take it what you really seem to be saying is that there has to be an explicit statement in there after this fragment, they have to add the words, and in such suit the university will not raise any claim that it has sovereign immunity. Is that what you're saying? Well, Your Honor, certainly if they say we waive sovereign immunity, that would be unapproved of law. My question to you is, is there anything less than that, that in your opinion would be enough to constitute a waiver of sovereign immunity? Your Honor, there might be, but I think this is far from it. For what? Well, I think you might say, if they were an appropriate court, an appropriate state or federal court, if you said any federal or state court in which a private party might be waived, sued rather, that would be one way perhaps of doing it. But that word appropriate is just too big, it's too vague, it's capable of too many different constructions. Let me ask you another question in your response to Judge Friedman, that if in fact this person who you say was unauthorized to waive anything had entered into a contract with the language that we're now saying might be adequate, you would no longer raise the argument that she had no authority? Of course we would, Your Honor, because her authority is not decided even by what she thinks she has, it is decided by what the law says she has. You're saying that the contract would have to go to the state legislature and be ratified? No, Your Honor, I'm saying that the state legislature must act to delegate to the trustees the authority to waive sovereign immunity. And this would apply, in your theory, this would apply to all state entities, that is, it would also have to give explicit authority, if there was a state-owned and operated zoo, they'd have to give authority to the zoo to waive sovereign immunity. If the zoo is an arm of the state, absolutely, Your Honor, it is the sovereign herself who must voluntarily consent to the waiver of sovereign immunity. So an arm can't waive it? No pun intended? No, Your Honor, an arm of the state cannot waive sovereign immunity unless the legislature authorizes the arm to do so. Okay, let's hear from the other side. I think we're coming to the end. Mr. Kachinowski. May it please the Court, with me today is Mr. Baum, the owner of Baum Research and Development Company. I think the panel has put a lot of good questions to opposing counsel, which I think we addressed in our brief. We think this is a fairly clear-cut case before the Court. We think that certainly the paragraph 3.3, article 3.3 of the patent license agreement is unambiguous, it's clear. When you say that all parties submit to the jurisdiction of a court, whether you modify it with the word appropriate or not, the words submit to jurisdiction are unequivocal expressions of consent. But does it matter what the clause says if she didn't have the authority to enter into it? She doesn't have the authority to bind the Commonwealth. It doesn't really matter what the clause says. Well, if we take that argument to its absolute peak, that's a question of agency, that's a question of consent, that's a question that should have been raised in the trial court below, which, as Your Honor pointed out to opposing counsel, was never raised until the Rule 50B post-trial JMOL. But you have a section in your brief that talks about how she may have had apparent authority. Is apparent authority enough under our law and the law of the Supreme Court, or is actual authority required? I think that the cases don't, I don't believe that the cases make out a clear line there, Your Honor. I think that the... Are you familiar with Doe v. United States, which is one of our federal circuit precedents? It says, quote, actual authority to bind the government is required to bind the government in a contract regardless of the agent's representation. I think that there's two lines of cases here, though. There may be a line of cases about apparent authority or actual authority having to do with express contracts, and of course then there's the whole line of Lapidus cases of waiver of sovereign immunity by taking various actions where we don't inquire into the mindset of the state actor. We assume that there was a waiver from various litigation-related acts. So I think one has to do with federalism, one has to do with the other concerns of judicial inconsistency and unfairness and equitable conduct of some kind in litigation. But only in litigation. Lapidus has never been read outside of litigation to encompass apparent authority to sign a contract. Lapidus has been limited to when a state voluntarily submits itself to litigation, they can't then argue that they're not going to be, that they want to, they haven't waived their sovereign immunity. And I have trouble with you trying to read Lapidus so broadly as to encapsulate apparent authority to enter a contract when all of our precedent seems to make clear that actual authority is required. So why don't you explain to me how she had actual authority? Well, to be candid, I don't know that we can explain how she had actual authority before this panel at this time because no discovery was taken on that issue because that issue was never brought before us in three years of litigation. I don't think it's disputed that at the time this issue was brought before the magistrate sitting as the district judge in this case, UMass had simply never raised the issue of whether Louise Griffin, the signatory to this contract, who reviewed the contract with Paul Stern and Terry O'Malley, who were the general counsel of UMass, didn't have authority to enter into this deal. So you would say there's nothing in the record that you can point me to that supports her having actual authority? Well, other than her, obviously she testified at trial that she was the signatory. She did not testify she didn't have power to sign the agreement. If the burden on us is… Does it matter whether she thinks she had actual authority or not? Well, if she had actual authority, I think that's certainly one factor. I think that what counsel is trying to place on us is to find a piece of paper where the trustees of the University of Massachusetts wrote to Louise Griffin or general counsel for the University of Massachusetts and say you now have authority to waive sovereign immunity or enter into these kinds of agreements. No discovery on that was ever undertaken, and I'll point out when the JMO motion, the second, the Rule 50B, the JMO motion post-trial, not during trial, but post-trial, was filed, that was the first time, as Your Honor pointed out, that UMass even raised any kind of agency issue whatsoever. At that point, and I'll also point out, it was not supported by any evidence. There were no affidavits, declarations, or otherwise from Louise Griffin or anyone at UMass that said she had no authority, apparent, actual, or otherwise. At that moment, we served deposition notices on all the relevant people, and I don't think that is disputed. We point that out in our briefs. Let me ask you a question. Do you make the argument that her apparently recognized authority to sign this agreement necessarily carried with it the authority to put anything in the agreement that she believed was necessary for the agreement to be most advantageous to the university? I think that the signatory in a major university to a patent license agreement, she testified, she's in charge of these agreements, and the university derives something like $20 million a year in revenue from patent licenses. Obviously, a lot of universities engage in this. Her authority as a signatory, her lawyers, UMass' counsel's authority to allow the agreement to be signed is, I think it's, anyone dealing with the university should rely on such authority. Well, you get into problems when you're raising issues of apparent authority. What I'm trying to find out is whether you make some argument that there's no occasion in this case to even look into whether the trustees did or didn't delegate to her authority to waive sovereign immunity, because necessarily inherent in the execution of such an agreement is the authority to do whatever is necessary for the agreement to be effective for the university. And if she makes the judgment that it's desirable for the university to waive sovereign immunity in a particular case or not waive sovereign immunity, that's her judgment, and you don't try to go behind that and say, well, she didn't have authority to do so. Well, I think it's inappropriate for the university now, faced with an adverse consequence of this agreement, to make that argument. I think it's certainly appropriate for a contracting party, for my client, a contracting party, to understand and believe for six years they were on notice that we believed they were breached, to have never brought this up, this issue up for six years, and literally put them on notice in 1999 and the verdict was in 2006. I suppose the answer to that would be, well, sovereign immunity goes to jurisdiction, and the mere fact that they didn't raise it for six years doesn't necessarily mean they've waived it. Well, that's a whole different set of issues, and certainly what I found noticeable was in their opening brief, UMass points the court to the Sixth Circuit, the procedural law of the Sixth Circuit as the controlling regional law. We agree with that, and in their reply brief, they say, oh no, we were wrong. We should look at federal law, federal circuit law on Eleventh Amendment immunity. And I think they did that, of course, because I think the Sixth Circuit has recognized that Eleventh Amendment immunity is akin to an affirmative defense, is akin to something that is waivable. It certainly has a duality in the federal law. The Supreme Court case recognizes that. And yet, once you recognize that Eleventh Amendment immunity is waivable, is akin to an affirmative defense, then you necessarily have to get into other procedural issues like waiver, which they did, like following Rule 16, like putting your facts and your disputed issues of fact and law into joint final criteria or you waive them, all of those issues. But counsel, you're not saying that we're subject to regional circuit law in this case, are you? We didn't. We didn't say that. Are you aware of our precedent written by the presiding judge here, Judge Newman, Regents of the University of Mexico versus Knight in 2003, which clearly says a waiver of sovereign immunity is an issue of federal circuit law? I'm aware of that case. I'm aware of cases that say, the Intel case cited by opposing counsel and us as well, that our procedural issues allow the region governance unless the issue is unique to a patent case. If we can cross this hurdle, the Supreme Court has spoken in some depth on the Eleventh Amendment in patent issues and within the last few years, and that's the law of the land. I don't see any controlling difference between the Sixth Circuit and the federal circuit as far as this aspect is concerned. As far as the issue before us is concerned, your opponent says that whether or not in this negotiation, your client thought that the university was waiving its immunity in case of dispute, they didn't do it. Maybe they represented that they did. It's certainly, it's hard to imagine a clearer statement that we submit ourselves to the jurisdiction of the federal and state courts than to waive immunity, which says you're immune from the jurisdiction. It was practically in the language of the statute. So it's an interesting question as to whether someone with this elaborate a title whose responsibility is patent licenses, because after those Supreme Court cases, I can't imagine anyone dealing with the university unless they get a waiver of Eleventh Amendment immunity. And which, and if this was in the clause before those, for the last six years before college savings and the companion case to college savings, the issue had arisen before, as you know, there were cases of this court before wrestling with the questions going both ways, being corrected in one case by the Supreme Court. So I think it's interesting and important if, in fact, this person with a title of associate director being in charge of technology transfer, essentially in patent licensing and partnerships and all the rest of it, had no authority to enter into any of the agreements that were entered into on behalf of the university. To me, I'm having a lot of trouble with the concept as such, but we need to get the law straight. Your Honor, we had a lot of trouble with the concept, too. And since these issues necessarily implicate some factual issues, some factual assertions now made by the University of Massachusetts as to actual authority, as to whether the trustees conferred authority on this particular individual or her office. And given the fact that this was brought up after a trial and brought up in a cursory fashion, we point out in a brief, they didn't make this argument. And Your Honor, Judge Moore pointed it out. They didn't make this particular argument even until we got to this court. They made the argument that the legislature didn't confer authority on the university. That's really the one paragraph argument they made when they started this 20-some-year-old Coleman v. Wayne State District Court decision. And at that point, we immediately said to the judge, to the district judge, well, that's a brand new argument. Let's take some discovery on it. Before it was acted on, before we even responded to the patent 11th Amendment motion, the judge said, no, I was right the first time. And the clause governs, and I'm denying the motion. So that's the procedural position from which this appeal was taken. And I think that's hugely disadvantageous to us to stand before you. I can't point you to a piece of paper for the simple reason that it was never a subject of any discovery. So needless to say, you would disagree with the idea that absent an express legislative enactment, the university does not have authority to waive sovereign immunity as appellant's counsel suggests. Yes, of course. As an arm of the body of the state, it seems to me if you're going to claim entitlement to sovereign immunity, you then also have the power to waive it. But am I wrong about that? No, you're correct. And certainly we pointed that out. We also pointed out, I believe that Section 14A of Chapter 75, the section that we did cite to the district court in response to the only argument they made, which is that there was no statute conferring authority in the trustees, we cited to Chapter 75, Section 14A, which we think does. I agree with you that the trustees certainly and explicitly have the right to contract concerning inventions and patents and all of that, right? I mean, that's one of the trustee sections you cited to. And one of the problems I also have with appellant's argument is if there's nothing that designates to Ms. Griffin or her office the right to contract, to waive sovereign immunity, then it seems like there would be nothing that actually designated them the right to contract at all. It seems they get it all or they get none. And if they're admitting that they have the right to contract in general in the absence of something expressed from the trustees to the parties, then I have trouble coming to the conclusion they don't also have the right to waive sovereign immunity. We have the same conclusion. I don't think that the severability clause particularly states that. It's stated a little differently. If there's no right to waive sovereign immunity, all of these many detailed provisions are unenforceable against the university. Is that right? Well, that's right. That's right. Meanwhile, they have my client's very sophisticated, unique machine, and they've used it for six years. Unless the questions are more questions. All right. Thank you. You have a couple of minutes, and it would be helpful if you would focus on the argument that you think is really dispositive in your favor. Yes, Your Honor. Four brief points. One, every step along the way, a waiver of sovereign immunity must be expressed unequivocally. Number two, in order to have actual authority to waive sovereign immunity, you have to start with an act of the Massachusetts legislature. That is not a question of evidence. That is a question of law. What case law says that only the legislature can waive sovereign immunity? I mean, if you're claiming that the university is an arm of the legislature. Opposing counsel has cited no case that says that anybody but the legislature can start a waiver of sovereign immunity. Well, that can't be right because the Supreme Court has said that the attorney general may waive sovereign immunity by removing a case from state to federal court. In that case, was there any statute that explicitly gave the attorney general the right to waive sovereign immunity? Your Honor, in that case, the court distinguished between waiver by consent outside of litigation and waiver by indication. I was just addressing your point that only the legislature can waive sovereign immunity. Your Honor, if we're discussing an agreement to waive immunity as opposed to a litigation act as was the case in Lapidus, then yes, only the legislature can authorize the waiver of sovereign immunity. The Coleman v. Wayne State case cited below says that. That's not a question of evidence. It's a question of law. That's a district court case. It is, Your Honor. No Supreme Court case has suggested, has it, that only the legislature can waive sovereign immunity. Your Honor, I would not say there's been no Supreme Court case that addresses that. It's a very interesting question. Opposing counsel has cited no case that says anybody other than the legislature can begin the waiver of sovereign immunity. In fact, the case below argued on the assumption that there was a statute, Chapter 75, Section 14a, but that does not contain any language speaking to a waiver of immunity. Your Honor, that also must be a resolution from the trustees. Opposing counsel says there's no evidence on that. I agree on that. If that is so, then the lack of evidence approves to the burden of the party having the burden of proof. Doesn't the claimant of immunity have the burden to establish immunity? No, Your Honor. We have the burden to establish we are an arm of the state. If they are claiming a waiver, if they have the burden to show a waiver, if they have the burden to show, and I'll quote this court's decision at the moment. There's nothing in the record showing, for instance, the authority of this associate director for technology transfer, which is patent licensing, technology license. That authority might have been very broadly described in her job description. Your Honor, the case that I think nails this point is this court's decision in Harbert v. Lummis. The quotation is on page 142, Fed 30, 1432. The fact that Harbert Lummis, the plaintiff, the fact that the plaintiff may have believed that the contracting officer had authority is irrelevant. Harbert Lummis, the plaintiff, must prove that the contracting officer had actual authority. Here, Baum must prove that Louise Griffin had actual authority to waive that immunity. If there is an omission in the evidence, it is there. Do you dispute she had the authority to contract, to sign licensing agreements? She had the authority to sign them, not to waive sovereign immunity. But if she had the authority to sign licensing agreements, how can we rely upon your argument that the trustees did not confer on her the right to waive sovereign immunity? I'm assuming, similarly, there's no evidence the trustees conferred on her the right to contract with regard to intellectual property. Your Honor, a different standard. An entirely different standard. There must be unequivocal expression of sovereign immunity. We are conceding she had authority to enter into the other parts of the contract. We are not disputing those things. But we are disputing that she had authority to waive sovereign immunity, if that is what that clause means. Okay, I think we need to wrap it up. They can sue in Michigan State Court. Perhaps they can sue in Massachusetts State Court. But they cannot sue in federal court. Okay, thank you. Thank you, Mr. Hurd. Mr. Kuczynski, the case is taken under submission.